STEINMETZ ET AL. *v.* STATE OF INDIANA ET AL.

[No. 30,633. Filed November 29, 1967.]

*George A. Purvis, John W. Tranberg,* of Indianapolis, for appellants.

*John J. Dillon,* Attorney General, and *Kenneth M. Waterman,* Deputy Attorney General, for appellees.

ARTERBURN, J.—This is an action brought for condemnation of certain real estate by the State of Indiana for highway purposes against the appellants and Rodocker Motors, Inc., who did not appeal.

During the pendency of the action Harry Steinmetz, the husband of appellant Bertha Steinmetz, died and American Fletcher National Bank & Trust Company was substituted as executor of the estate of said decedent.

The evidence and record show that Harry J. and Bertha Steinmetz were the owners as tenants by entireties of a certain tract of land on the southeast corner of Keystone Avenue at Stewart Street in the City of Indianapolis. Harry Steinmetz individually was also the owner of another tract of land across Stewart Street on the northeast corner of North Keystone Avenue. Both tracts were involved in this law suit. The Steinmetzs lived in a seven room dwelling house on the first described tract of land and there was a store room in front of the house where the Steinmetzs operated a business known as Keystone Meat Market. It is claimed that Mrs. Steinmetz owned this business individually, which was located on the property that she and her husband owned by the entireties.

The main question and contention here is that Mrs. Steinmetz is entitled to damages for the alleged loss of her meat market business located on the property owned by her and her husband by the entireties. This question is raised in the first instance by a long hypothetical question the appellants asked a witness, in which the meat market and all its personal property was described and in which estimated net profits were assumed for three or four previous years. The question concluded by asking for an opinion as "to the market

value of this market on February 25, 1960." The court sustained objections to this question.

The appellants rely to a large extent upon the decisions in *State* v. *Stabb* (1948), 226 Ind. 319, 79 N. E. 2d 392 and *City of Evansville* v. *Bartlett, et al.* (1962), 243 Ind. 464, 186 N. E. 2d 10. The opinions in these two cases have been reviewed a number of times by this Court since their rendition. In the *Stabb* case this Court attempted to reverse prior decisions. It is true that this Court stated that profits were an element to consider under the statute and disapproved a prior decision to the contrary—*Illinois Central R. Co.* v. *Howard* (1925), 196 Ind. 323, 147 N. E. 142. However, since that date a number of cases have disapproved such ruling.

In *Elson* v. *City of Indianapolis* (1965), 246 Ind. 337, 204 N. E. 2d 857 we restricted the effectiveness of the *Stabb* case by stating that its holdings should be limited to a showing of a gross gallonage of gasoline sold on the premises or the total volume of business, and not the net profits. This was done on the rationalization that the gross business done had some relationship to the location of the real estate and the traffic and thereby was relevant as to the value of the real estate as a business site. The inquiry is directed to the highest and best use to which the real estate is adaptable.

In *Hagemann, et al.* v. *City of Mt. Vernon, et al.* (1958), 238 Ind. 613, 154 N. E. 2d 33 it was stated that net profits made by a business on a particular location were too speculative, since they were affected greatly by the manner in which the business was conducted, the good will, the efficiency of the business organization and many other intangible factors not related to the land. It may be pointed out that a business may be moved and take with it its good will, the efficiency of its organization and all its personal property. However, those things attached to the real estate, such as the desirability of the location, which results in a large volume of traffic connected with a busi-

ness, is an element attached to the real estate which may be taken into consideration by the appraisers in determining the value of the real estate as a business site.

In *State* v. *Hierholzer* (1965), 246 Ind. 361, 207 N. E. 2d 218, at p. 220, we stated:

> "Furthermore, in the Elson case we pointed out that the only effect of State v. Stabb, supra, was to permit the introduction into evidence of testimony as to the volume of business conducted on the land in order to show the value of such land, and that it was not the intent of the court in the Stabb case to create a new criterion of damages in the form of loss or business or loss of profits from such business."

Finally, in *State* v. *Jordan* (1966), 247 Ind. 361, 215 N. E. 2d 32, at p. 35 we stated:

> "The case of State v. Stabb (1948), 226 Ind. 319, 79 N. E. 2d 392 seemed to recognize the principle that loss of profits in a business was compensable in an eminent domain proceeding, overruling certain prior cases cited in that opinion. However, the Stabb Case has been criticized and distinguished to such an extent that we feel that it no longer has any legal significance." See also: *Papp* v. *City of Hammond* (1967), 248 Ind. 637, 230 N. E. 2d 326.

The objection to the hypothetical question propounded as to the profits determined by the business located on the real estate in question was properly sustained by the trial court.

It is next urged that under the rule of the *Bartlett* case, *supra,* the appellant, Mrs. Steinmetz, was entitled to show the value of her business under the theory that she had a separate interest in the real estate other than that which she held by the entireties, and under such a separation of interests she was entitled to show what the value of her interest was. With this we cannot agree. If she had had a separate leasehold interest for a term of years, we would have a case similar to the *City of Evansville* v. *Bartlett, supra.* The term of years and the character of the business

operated under such lease would then be pertinent matters for consideration in the determination of her damages in being deprived of her leasehold interest. In the case before us she had no leasehold interest; her entire interest was in the title by the entireties, for which she received compensation. All she had was the mere occupancy of the land, so far as the business was concerned. This is not a separate interest.

The appellants claim error because the court refused to give certain instructions they tendered, and because the trial court gave instructions tendered by appellee and also by Rodocker Motors, Inc. The instructions appellants tendered, which the court refused to give, were numbered 4, 9, 12 and 13. Number 4 was the same instruction appellant tendered and which the court gave (number 16), to which the appellants also objected. We find no error in this instruction, since it set forth the statute pertinent to the determination of damages in this case. The court properly refused instructions 9 and 12 because they included the element of damages for loss of business in question. Appellants' tendered instruction number 13 was covered by appellee's instruction number 17, which the court granted.

Appellants objected to the court giving appellee's instructions numbered 1, 15, 16 and 17. As we stated previously, number 16 is the same as instruction appellants tendered (number 4). We find that instructions numbered 1, 15 and 17 correctly state the law as to special benefits. The only complaint of the appellants is that they did not also cover general benefits. The appellants can make no complaint, since they had the opportunity to tender an instruction on general benefits, if they so desired, and it appears to us that the instructions given by the court fully cover such issue. We find the court committed no errors in the particulars urged.

We note further that the court gave appellants' instruction number 11, which is substantially the same as appellee's

instruction number 17. We find the court did not err in giving appellee's tendered instructions.

The appellants further say that defendant Rodocker's given instructions numbered 5 and 7 instruct the jury that Rodocker would be entitled to damages for interruption of their business, and thus thereby decrease the amount of damages going to the appellant, the owner of the other interest in the same real estate. We find no sound basis for such a contention, since any increase in the damages going to Rodocker might just as well result in an increase in the total damages for the real estate and thus not necessarily reduce the share going to the appellants-Steinmetz. The appellants cannot complain because a co-defendant who also holds an interest in the same real estate attempts by evidence to increase the value of his interest or share in such real estate, when it is pertinent evidence as to valuation.

Instruction number 5, we point out, was merely a recital of the statute, which prohibits placing any obstructions on a state highway or digging up the highway for construction purposes without a permit of the State Highway Commission.

Instruction number 7 merely recited that the City of Indianapolis had the right to make sewer constructions on the highway and that the defendants are entitled to recover only special damages suffered as a consequence of the construction of such sewer, We find the instructions given properly state the law.

The appellants claim error because the court refused to strike out certain testimony made on behalf of defendant-Rodocker as to the value of their leasehold. These objections were made to questions on cross-examination, and the appellee-State of Indiana correctly points out that the questions were within the scope of the direct examination.

It is further pointed out that the appellants failed to object to the questions when asked, but waited until the exami-

nation was concluded to make the motion to strike the testimony.

Finally, the appellants claim the court erred in sustaining objections to certain questions on cross-examination of a state witness. These questions related to whether or not the "access to the property" was diminished by the construction. The objection was made that whether "access" was or was not reduced, was a legal question, and that the witness could be asked to describe the property and the method of construction. It is pointed out that the appellants were permitted to give such a description of the property before and after the construction. We find the court committed no error in the rulings complained of and find that the appellants were not in any way prejudiced thereby, since the evidence was fully presented to the jury.

The judgment of the trial court is affirmed.

Lewis, Mote and Hunter, JJ., concur.

Jackson, C. J., concurs in result.

NOTE.—Reported in 231 N. E. 2d 232.