STATE OF INDIANA *v.* CLARK.

[No. 30,784. Filed June 22, 1966.]

*John J. Dillon,* Attorney General, and *Douglas B. McFadden,* Deputy Attorney General, for appellant.

*Hall Cochrane,* of Indianapolis, for appellee.

RAKESTRAW, C. J.—In the court below there were several criminal affidavits on file against the appellee. Two of them involved charges brought under the act commonly known as the "Offenses Against Property Act." [Acts 1963 (Spec. Sess.) ch. 10, §§ 1-15, being Burns' Ind. Stat. Anno. §§ 10-3028—10-3041 (1965 Supp.).]

After preliminary arraignment proceedings, the court appointed a pauper attorney for the defendant, and proceeded to tell him in open court:

> "No, this is a straight affidavit, uttering a forged instrument, theft, obtaining unauthorized control of property, which the court's opinion is that the Statute is unconstitutional, and the Court would appreciate it if you would raise the question."

Pauper counsel proceeded to file a motion to quash. After some further proceedings, the two cases were consolidated for trial.

There is considerable additional matter in the record. Apparently the defense counsel did not understand exactly what sort of motion the court wished to have filed, and what the court wished to be incorporated in the motion. There was a session at which the court and the pauper counsel both had to be advised of the requirement that a memorandum accompany the motion to quash.

After the motion to quash had been duly prepared and submitted to the satisfaction of the court, the court proceeded to sustain the motion as to both charges as follows:

> "By reason of Article 4, Sections 19 and 20, Article 1, Sections 13 and 23 of the Indiana Constitution and the 5th and 14th Amendments of the U. S. Constitution the Acts of 1963 (Special Sessions of the Indiana General Assembly) Chapter 10, Sections 1-15 as applied to this defendant are void and the defendant's motions to quash are sustained."

The two affidavits involved are relatively simple. In one affidavit, the appellant is charged with obtaining money by deception by issuing a check purportedly drawn by another with knowledge that the check would not be honored and with the intent of permanently depriving the owner of the money. In the second affidavit he is charged with exerting unauthorized control over an automobile with the intent to deprive the owner of it permanently. No question is raised as to the certainty of the charges presented.

From an examination of the record, there is some question whether the constitutionality of the statute involved is being raised by a party affected. It appears to be a question raised on the personal whim of the judge in the court below. Neither the appellee nor his counsel have exhibited a clear cut understanding of what issues are being raised and why they are being raised. However, since the constitutionality of the question has been raised, it seems advisable to discuss that question in so far as necessary to dispose of the cases here involved.

In discussing the constitutionality of any act of the legislature, it is necessary that certain basic principles be reviewed. The first of these is that there is a strong presumption favoring constitutionality of an act of the legislature.

> "The power to declare a statute void is to be exercised with the utmost care, and after all doubts as to its constitu-

tionality have been removed. So, it is the general rule that a statute on the books at any given time, not judicially declared unconstitutional or invalid, is presumed to be valid until the contrary clearly appears; he who raises the question of constitutionality must assume the burden of making the unconstitutionality clearly appear by establishing invalidating facts.

The court will indulge all reasonable presumptions in favor of an attacked statute, and the invalidity of the statute must be shown beyond a reasonable doubt. Every reasonable doubt must be resolved in favor of the statute's validity. . . ." 5 I. L. E. Constitutional Law, § 39, pp. 314-316.

It is also a fundamental proposition that the person attacking the constitutionality of a statute must have his rights adversely affected by the particular act and the particular section of the act which he is attacking.

"As a general rule, the constitutionality of a statute or other governmental action is to be considered in the light of the standing of the party who seeks to raise the question and its particular application. It is a firmly established principle of law that the constitutionality of a statute or ordinance may not be attacked by one whose rights are not, or are not about to be, adversely affected by the operation of the statute. This rule applies to all cases both at law and in equity, and is equally applicable in both civil and criminal proceedings. One of the many variations of this rule is the principle that one may not urge the unconstitutionality of a statute who is not harmfully affected by the particular feature of the statute alleged to be in conflict with the constitution.

A constitutional question may not be raised by one whose rights are not directly and certainly affected; or in a case where no attempt is being made to enforce the provision attacked. In other words, one may attack the constitutionality of a statute only when and as far as it is being, or is about to be, applied to his disadvantage; and to raise the question he must show that the alleged unconstitutional feature of the statute injures him and so operates as to deprive him of a constitutional right, and, of course, it is prerequisite that he establish in himself the claimed right which is alleged to be infringed. . . ." 16 C. J. S. Constitutional Law § 76, pp. 226-236.

"Although constitutional rights should not be grudgingly extended, it is a firmly established principle of law that the constitutionality of a statute or ordinance may not be attacked by one whose rights are not, or are not about to be, adversely affected by the operation of the statute; in other words, a litigant can question a statute's validity only when and so far as it is being or is about to be applied to his disadvantage. . . ." 5 I. L. E. Constitutional Law, § 32, p. 293.

It is also well settled that the legislature has the power to define crimes and to specify the punishment to be imposed. It has the inherent power to prohibit and provide punishment for any act as a crime, provided that it does not violate the restrictions of the state and federal constitutions. 8 I. L. E. Criminal Law, § 2, p. 65.

Contrary to the well settled principles of law above set forth, the appellee maintains in his brief that it is the duty of the appellant to establish that the act is constitutional. In line with this contention, he cites few cases in his brief, makes vague general arguments, and does not attempt to show in any particular instance where the appellee is being harmed or is about to be harmed by the operation of the statutes. Such argument as the appellee's brief contains is largely an attempted rebuttal of points made and arguments advanced in the appellant's brief.

Many different propositions have been cited at various times throughout the record in this cause. We will attempt to summarize the contentions made as to the constitutionality of the act as follows:

1. The appellee maintains that the title of the act is not sufficient to cover all topics or subjects included within the act. The title to the act reads as follows:

"An act concerning theft and related public offenses against property and person, prescribing penalties, and repealing laws or parts of law in conflict." [Acts 1963 (Spec. Sess.), ch. 10.]

The word *theft* has been defined as follows:

"Act of stealing; specif., the felonious taking and removing of personal property, with intent to deprive the rightful owner of it; larceny. In various penal codes in the United States theft is defined so as to include embezzlement and in some cases 'any unlawful acquisition of property.'" Webster's New International Dictionary, Second Edition.

Assigning ordinary meanings to the words, it is clear that the offenses charged in the two affidavits in issue in this case would come within the purview of the title to the act. The Indiana Constitution specifically provides:

"But if any subject shall be embraced in an act, amendatory act or amendment of a code, which shall not be expressed in the title, *such act, amendatory act or amendment of a code shall be void only as to so much thereof as shall not be expressed in the title.* The requirements of this paragraph shall not apply to original enactments of codifications of law." [Emphasis supplied.] Art. 4, § 19 Indiana Constitution [as amended November 8, 1960].

Hence even if the appellee's argument that the act contains items not covered by the title is correct, such contention would not be sufficient to invalidate the statute as to the charges against him.

2. The appellee next contends that the legislature was not properly apportioned at the time the act in question was passed, and that improper parliamentary procedure was employed in the passage of the act. The appellee cites no cases in support of his position on either question.

It is of course well settled that lack of proper apportionment of the legislature is not sufficient to render an act unconstitutional. *Fruit* v. *Metropolitan School District, etc.* (1961), 241 Ind. 621, 172 N. E. 2d 864; *Welsh, Governor, et al.* v. *Sells et al.* (1963), 244 Ind. 423, 192 N. E. 2d 753, 193 N. E. 2d 359; *Patrons, etc.* v. *School City of Kendallville* (1964), 244 Ind. 675, 194 N. E. 2d 718.

It is likewise well settled that if an act is apparently adopted, printed, and published, it will be presumed to be

valid; and in the absence of a positive showing to the contrary from the records of the General Assembly, the proper certification by the presiding officers of the legislature is conclusive evidence of validity. *Evans, Auditor of State* v. *Browne* (1869), 30 Ind. 514; *Western Union Telegraph Company* v. *Taggart, Auditor, et al.* (1895), 141 Ind. 281, 40 N. E. 1051.

The appellee also maintains at various places in the record that the statute is unconstitutional because it requires finders of lost goods to perform services without compensation in that the act makes it an offense not to take reasonable steps to return lost goods to the owner; that certain portions of the act provide improper classification, particularly the portion dealing with entrusted property and property of government or credit institutions; that certain portions of the statute create statutory inferences which the appellee claims are unconstitutional; and that certain sections of the statute are vague and ambiguous. For discussion we will combine all of these contentions.

It is sufficient to note that the charges against the appellee were obtaining money by means of a fraudulent check with the intent to deprive the owner of it and obtaining unauthorized control of an automobile with the intent to deprive the owner of it. Clearly the appellee is not being harmed by any of the above listed sections or provisions. Therefore he is not entitled to rely on any of these contentions as a basis for declaring the statute unconstitutional. *Pittsburgh, etc., R. Co.* v. *State* (1913), 180 Ind. 245, 102 N. E. 25; *Lander* v. *State* (1958), 238 Ind. 680, 154 N. E. 2d 507.

The concluding paragraph of the appellee's brief reads in part as follows:

"Appellee submits that the Indiana Theft Act is like Pandora's box and the problems attempted to be covered in shot gun fashion by this statute is the net result of poor draftmanship, lack of research, and ill-advised effort . . ."

It seems to us that this is an apt if not grammatically correct description of the appellee's attack on the statute in question made in this case. It has not been shown that the appellee is being harmed or is about to be harmed by any unconstitutional provision contained in the Offenses Against Property Act.

The judgment of the trial court is therefore reversed and this cause is remanded for further proceedings.

Arterburn & Myers, JJ., concur. Jackson, J., concurs in the result. Achor, J., not participating.

NOTE.—Reported in 217 N. E. 2d 588.