**Lester Leo HARDING and Wanda L. Harding, Appellants (Defendants Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 19A04–9206–CV–214.**

Court of Appeals of Indiana, Fourth District.

Nov. 19, 1992.

Transfer Denied Jan. 21, 1993.

plaintiff [condemnor] to make such an offer at least ten (10) days before trial, is entitled to interest. The State argues that interest is only allowed upon a trial of exceptions to the court appointed appraiser's report and therefore, since the defendants did not proceed to trial, they are not entitled to interest on the amount defendants received from the statutory pre-trial settlement. The defendants, Lester and Wanda Harding (Hardings) claim that: (1) it is well settled that just compensation includes interest on the damages awarded from the date the State takes possession of the property; (2) the State's position is contrary to Indiana's clear public policy favoring settlements; and, of course, (3) the statute is unambiguous where it states that the amount offered as settlement is exclusive of interest and costs. The Hardings argue that the State would, in effect, punish them for saving the State the cost of a trial.

The trial court agreed with the State. We agree with the Hardings and reverse.

Fremont O. Pickett, Shoals, for appellants.

Linley E. Pearson, Atty. Gen., Robert B. Wente, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

This is a case of first impression in Indiana. The issue is whether a landowner who accepts a condemnor's settlement offer of a condemnation action under Ind. Code 32–11–1–8.1,[1] which requires the

## FACTS

The facts are not in dispute. On March 31, 1988, the State, after failing in an attempt to purchase all of Harding's Martin County land for use in a road project for $74,250, filed condemnation proceedings against the Hardings. In June, the trial court ordered that the Harding's land be taken and appointed appraisers who fixed damages at $89,000. The State then paid this amount to the clerk of the court. In September, the Hardings withdrew the money. The State took possession of the

---

1. **I.C. 32–11–1–8.1 Offer of Settlement; acceptance; rejection**

 (a) Not less than ten (10) days before any trial involving the issues of damages, plaintiff shall and defendant may file and serve on the other party an offer of settlement, and within five (5) days thereafter the party served may respond by filing and serving upon the other party an acceptance or a counter offer of settlement. The offer shall state that it is made under this section and specify the amount, *exclusive of interest and costs,* which the party serving the offer is willing to agree to as just compensation and damages for the property or interest therein sought to be taken. The offer or counter offer supersedes any other offer previously made under this chapter by the party.

 (b) An offer of settlement is deemed rejected unless an acceptance in writing is filed and served on the party making the offer, before the commencement of the trial on the issue on the amount of damages.

 (c) If the offer is rejected, it may not be referred to for any purpose at the trial, but may be considered solely for the purpose of awarding costs and litigation expenses under section 10 of this chapter.

 (d) This section does not limit or restrict the right of a defendant to payment of any amounts authorized by law in addition to damages for the property taken from him....

 (Paragraph (e) omitted as not pertinent, emphasis added.)

land by a writ of assistance on December 14, 1988. On January 27, 1992, the State offered a settlement under I.C. 32–11–1–8.1 of $101,250. The Hardings accepted the State's offer on January 31, 1992, with the following caveat:

"Defendants assume that they will receive interest from June 3, 1988 until September 13, 1988 at the rate of Eight percent annum (8%) on One Hundred One Thousand Two Hundred Fifty Dollars ($101,250.00) and from September 13, 1988 until the date the final sum of Twelve Thousand Two Hundred Fifty Dollars ($12,250.00) is paid."

R.96. The trial court accepted this agreement, but found that "[p]ursuant to IC 32–11–1–9,[2] interest upon a final judgment is allowable only upon trial of Exceptions to the Appraisers' report" and ordered the State to pay the $12,250 to the Clerk for transmission to the Hardings. R. 100. The Hardings claim that they are entitled to interest at 8% (the statutory interest rate) on $12,250.00 from the date the State took possession, December 14, 1988, to February 12, 1992.

## DISCUSSION
## I—BACKGROUND AND INDIANA POLICY

### A. Just Compensation

Indiana courts have long recognized that interest is an "essential element" of the just compensation commanded by our Constitution when private property is taken for public use. *Struble v. Elkhart County Park & Recreation Bd.* (1978), 175 Ind. App. 669, 373 N.E.2d 906, 907; *State Highway Com'n v. Blackiston Land Co., Inc.* (1973), 158 Ind.App. 93, 301 N.E.2d 663. *See also State v. Stabb* (1948), 226 Ind. 319, 79 N.E.2d 392; *Schnull v. Indianapolis Union Ry. Co.* (1921), 190 Ind. 572, 131 N.E. 51. " 'Just compensation' is comprised of two essential elements: the condemnation award and the interest thereon." *Struble, supra,* 373 N.E.2d at 909. The

purpose of money damages—the condemnation award—is to compensate the landowner for the value of the land taken. Interest on the money damages is intended to compensate the landowner for his loss of use of the land from the time of taking until he receives the damages awarded. *Blackiston, supra.* During the time before payment, landowners that are deprived of the use of their property are entitled to interest on the damages awarded because they have neither the use of the land nor the money that has been awarded. *State ex rel. Ensley v. Superior Court of Marion County* (1959), 239 Ind. 583, 159 N.E.2d 115, 118; *Schnull, supra.* Before 1965, because the legislature had not provided for interest on condemnation judgments, courts computed interest thereon at the legal rate. *Struble, supra,* 373 N.E.2d at 908; *Stabb, supra; State v. Coridan* (1944), 222 Ind. 545, 54 N.E.2d 649.

In 1965, the legislature created statutory provisions for interest on condemnation awards. *Struble, supra,* 373 N.E.2d at 908; I.C. 32–11–1–8(6). The condemnation interest rate was originally set at 4%. I.C. 32–11–1–8(6) (1965). The constitutionality of this legislation was challenged in *Gradison v. State* (1973), 260 Ind. 688, 300 N.E.2d 67. The supreme court found it constitutional, held that the legislature could set the rate of interest in condemnation cases, and stated that:

The origin of landowner's right to compensation is constitutional and statutory. It is not based upon the voluntary acts and agreements of the parties.... We perceive of no reason why the Legislature may not prescribe the rate of interest to be paid upon condemnation awards and alter it from time to time so long as it is not so unreasonably low as to be a deprivation of "just compensation."

*Id.,* 300 N.E.2d at 83.

The purpose of I.C. 32–11–1–8(6)[3] is to set a rate of interest in condemnation proceedings separate from the legal rate of interest, nothing more. As originally en-

---

**2.** I.C. 32–11–1–9 refers to the appointment of appraisers and the submission of their report. We assume that this is a typographical error and the court meant I.C. 32–11–1–8(6).

**3.** I.C. 32–11–1–8 states in pertinent part that:
Sixth. In any trial of exception, the court or jury shall compute and allow interest at the rate of eight percent (8%) per annum on the amount

acted, I.C. 32–11–1–8 consisted only of the first two sentences which state:

> Any party to such action, aggrieved by the assessment of benefits or damages, may file written exceptions thereto in the office of the clerk of such court in vacation, or in open court if in session, within twenty (20) days after the filing of such report, and the cause shall further proceed to issue, trial and judgment as in civil actions; the court may make such further orders, and render such findings and judgments as may seem just. Notice of filing of the appraisers' report shall be given by the clerk of the court to all known parties to the action and their attorneys of record by certified mail.

*Id.*

The 1961 act added the rest of the introductory paragraph and clauses one through five, which set forth the procedures for the withdrawal of damages paid to the clerk of the court—except for the sixth clause that set an interest rate of 4%, which was added by amendment in 1965. The 1975 act raised the interest rate from 4% to 8% and also excluded interest on damages equal to those awarded by the appraisers and withdrawn by the condemnee. *See supra,* n. 3; West's Annotated Indiana Code 493 (1992 Supp.). Read in its entirety, it is clear that I.C. 32–11–1–8 sets forth a procedure by which the appraisers' report is to be challenged, i.e., taken "exception to." There is no indication that it was intended to abrogate the rights of a landowner to just compensation.

### B. Settlements in Indiana

 A settlement is an agreement to terminate or forestall all or part of a lawsuit, *Gorman v. Holte* (1985), 164 Cal. App.3d 984, 211 Cal.Rptr. 34, and the judicial policy of Indiana strongly favors these

agreements. *Manns v. State of Indiana Department of Highways* (1989), Ind., 541 N.E.2d 929; *see also State ex rel. Roberts v. Morgan Circuit Court* (1968), 249 Ind. 649, 232 N.E.2d 871, 873 (overruled on other grounds). The carrying out of settlement agreements should be controlled in the court that approved it. *Brant Construction Co. v. Lumen Construction Co.* (1987), Ind.App., 515 N.E.2d 868, *reh'g denied, trans. denied.* The breaching of a settlement by one of the parties is actionable in Indiana. *See Gary Mun. Airport Auth. v. Peters* (1991), Ind.App., 583 N.E.2d 1213 (action brought for breach of settlement agreement); *Gary Mun. Airport Auth. Dist. v. Peters* (1990), Ind.App., 550 N.E.2d 828, and a trial court has the power to order specific performance. *Germania v. Thermasol, Ltd.* (1991), Ind.App., 569 N.E.2d 730. Thus, it is clear that in Indiana, settlements are favored and courts have the power to enforce them.

### II—DECISION

The State is asking us to find that a statute, specifically I.C. 32–11–1–8.1, can abrogate a landowner's constitutional right to just compensation in condemnation proceedings. If the statute in question actually attempted to do this, we would be duty bound to find it unconstitutional. However, the purpose of I.C. 32–11–1–8.1, as noted by the State, is: (1) to promote settlements; and (2) to establish a point at which the defendant may recover up to $2500 of his litigation expenses. I.C. 32–11–1–8.1 is taken almost verbatim from Section 708 of the Model Eminent Domain Code.[4] The Comment provided by the drafters states in part:

> Section 708 establishes a procedure by which either party to a condemnation action may make a formal offer to settle.

---

of a defendant's damages from the date plaintiff takes possession of the property; but in no event shall any interest be allowed on any amount of money paid by the plaintiff to the clerk of the court after the same is withdrawn by the defendant....

**4.** There are two major differences between Indiana's version and the Uniform Code. First, in our version, the Plaintiff *shall* and Defendant *may* make an offer of settlement, whereas the Uniform Code states that *"either party may"* file

an offer of settlement. Thus, it is clear to us that our Legislature wished to strongly encourage settlement of these cases by requiring one party, the condemnor, to make a settlement offer prior to trial. Second, § 708(d) in the Uniform Code uses the word "compensation." Indiana's code uses the term "damages." Thus, the legislature conformed Indiana's code to Indiana's common law.

We also note that section 708 is similar to Ind.Trial Rule 68—Offer of Judgment.

The [condemnor's] decision to accept or reject an offer made by the [condemnee] will be influenced by the prospect that the latter will be entitled to an award of litigation expenses ... if the amount awarded by the trier of fact exceeds the amount of the rejected settlement offer. Conversely, a [condemnee's] decision to accept or reject such an offer from the [condemnor] will be affected by the realization that if the award is less than the offer, the [condemnee] will be denied recovery of costs incurred after the offer was made.

Model Eminent Domain Code § 708 (1974).

The State claims that the significance of the term "exclusive of interest and costs" in I.C. 32–11–1–8.1(a) is to "trigger the attorney fees provision of section 10" and therefore the Hardings are not entitled to interest. State's Brief at 9. We fail to follow this leap of logic. I.C. 32–11–1–8.1 is a mandate by the legislature to the condemnor to make one last attempt to settle the case before trial. The legislature set the terms of this final offer thus: (1) the plaintiff shall make an offer not less than ten (10) days before trial; (2) the defendant may make an offer; (3) the party receiving the offer has five days to respond; (4) the offer shall state that it is made under I.C. 32–11–1–8.1; and (5) the offer shall specify the amount, *exclusive of interest and cost,* which the party making the offer acknowledges as damages for the interest taken, in this case, the fee. (Emphasis added). "Exclusive of" means just that—the offer does not include costs and interest. It does not exclude interest or costs when the settle-

ment is reduced to a judgment—such a meaning would be absurd. This is only logical in light of the way interest in condemnation proceedings is calculated—from the day of the physical taking to the date of the receipt of the damages by the condemnee.[5]

In addition, I.C. 32–11–1–8.1(d) clearly states that "[t]his section does not limit or restrict the right of a defendant to payment of any amounts authorized by law in addition to *damages* for the property taken from him." (Emphasis added.) As noted above, it has long been settled law in Indiana that "just compensation" includes interest on money damages. Our statute defining "damages" does not include interest as a part of damages.[6] It is also Indiana's policy to encourage settlements. The State's interpretation of the statute would be contrary to well settled law and also would discourage settlements—which is against the clear intent of the legislature.

Thus, we find no merit in the State's arguments. We therefore reverse the judgment of the trial court. This cause is remanded to the trial court so that it may calculate the interest due the Hardings on the difference between the amount the State deposited in 1988 and the amount of the settlement received by the Hardings in 1992.

Reversed.

CHEZEM and SULLIVAN, JJ., concur.

---

**5.** The State, in making its offer as per I.C. 32–11–1–8.1, implicitly adopted all of the terms mandated by the legislature. Thus, the offer was exclusive of interest and costs. We note that this section, which creates a statutory framework for settlement before trial, does not in any way prohibit or prevent the parties from settling at any time prior to, or after, the ten day window. Nor does it dictate the terms of any such agreement—the parties are free to negotiate any terms that are mutually agreeable. It is clear to us that the legislature's purpose in enacting this section paralleled the comments to the Uniform Code, i.e., to encourage settlements.

**6.** Damages are defined in I.C. 32–11–1–6. Damages include:

 1. fair market value of the land;
 2. fair market value of any improvements located on the land;
 3. damages, if any, to the residue of the land taken;
 4. other damages resulting from the construction of the improvements in the manner proposed.

Since all of the Harding's land and improvements were taken, items (3), (4), and a provision permitting offsetting benefits do not apply here.